IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 3, 2020

**DAVID TIMOTHY DUNGEY v. DORIS ANNE DUNGEY**

**Appeal from the Circuit Court for Montgomery County**
**No. MC CC CV DV 14-735   Ross H. Hicks, Judge**

_____

**No. M2020-00277-COA-R3-CV**

_____

In this post-divorce case, Doris Anne Baumgaertner ("Mother") appeals the trial court's decision to deny her request to relocate the parties' minor son ("Child") to Germany. She also appeals the decision to change the primary residential parent designation from her to David Timothy Dungey ("Father"). We hold that the trial court did not abuse its discretion. The judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ARNOLD B. GOLDIN, J., joined.

John W. Crow, II, Clarksville, Tennessee, for the appellant, Doris Anne Baumgaertner.

Steven C. Girsky, Clarksville, Tennessee, for the appellee, David Timothy Dungey.

**OPINION**

**I. BACKGROUND**

The parties were divorced by the trial court's order entered on February 11, 2015. At that time, Father was on active duty serving in the U.S. Army. He had been stationed in Germany, where the parties were married in 2006. Child was born on June 18, 2006. Both Mother and Child hold dual citizenship of the United States and Germany. At the time of divorce, the parties were living in Clarksville, Tennessee. Also living with them was Mother's daughter from an earlier relationship, Aline Baumgaertner ("Half-Sister").

In the divorce action, Mother requested the trial court to approve her relocation with Child and Half-Sister back to Germany. The trial court entered a permanent parenting plan designating Mother as primary residential parent and granting Father 137 days per year in parenting time. The trial court declined Mother's relocation request, stating:

> This court recognizes that there is no good solution to this case. When these Parties married back in 2006, and had a child, they entered into an agreement, that even though they may one day divorce, they were going to have to see it through. I understand there may have been discussions about everybody moving to Germany, but [Mother] married [Father] knowing he was in the United States Army. She came to the United States with her child less than a month old. The child has lived in this country. She brought her daughter who was six years old at the time. That child is now in the 10th grade. On that basis, the Court is not going to approve the Parties' minor child being relocated to Germany.

Father's residential parenting time included every other weekend from Friday at 5:00 p.m. until Sunday at 5:00 p.m., and Wednesday evenings from the end of school until start of school Thursday morning. Father retired from active military duty in November of 2016. In August of 2017, Father moved from Clarksville to Fenton, Missouri, a suburb of St. Louis. The parties agreed that Father would give up his Wednesday evenings with Child due to the distance, which he testified was about 280 miles. Father continued to travel to Clarksville every other weekend to visit Child. In September of 2018, Father moved in with his fiancée, Jo Ann Antenor, and her two children.

On January 18, 2019, Mother sent Father a certified letter notifying him of her intent to relocate with Child to Germany in the spring of 2019. On February 11, 2019, Father filed the petition currently at issue, requesting the trial court to deny Mother's request to move the Child to Germany, and to change the designation of primary residential parent from Mother to Father. Mother moved to Germany at some point in the middle of 2019.

At the August 7, 2019 hearing, the trial court heard testimony from both parties, Child, Father's fiancée, and Half-Sister, who testified telephonically from Germany. In its final judgment, the trial court analyzed and applied the factors required by the Tennessee relocation statute, Tenn. Code. Ann. § 36-6-108 (Supp. 2019), denied Mother's request to relocate Child to Germany, and amended the parenting plan to designate Father as primary residential parent and modify the residential parenting schedule.

## II. ISSUES PRESENTED

Mother appeals, raising the issue of whether the trial court erred in granting Father's petition in opposition to Mother's request to relocate the Child and modifying the permanent parenting plan. Both parties raise the issue of attorney's fees on appeal, each arguing that he or she should be awarded attorney's fees by this Court.

## III. STANDARD OF REVIEW

Our review of the trial court's factual findings is de novo, with a presumption of correctness unless the preponderance of the evidence in the record is otherwise. Tenn. R. App. P. 13(d); *C.W.H. v. L.A.S.*, 538 S.W.3d 488, 495 (Tenn. 2017). In *C.W.H.*, the Supreme Court set forth the standard of review in child custody cases as follows:

> This Court has previously emphasized the *limited* scope of review to be employed by an appellate court in reviewing a trial court's factual determinations in matters involving child custody and parenting plan developments. Notably,
>
> > a trial court's determinations of whether a material change in circumstances has occurred and whether modification of a parenting plan serves a child's best interests are factual questions. Thus, appellate courts must presume that a trial court's factual findings on these matters are correct and not overturn them, unless the evidence preponderates against the trial court's findings.
>
> Indeed, trial courts are in a better position to observe the witnesses and assess their credibility; therefore, trial courts enjoy broad discretion in formulating parenting plans. Thus, determining the details of parenting plans is peculiarly within the broad discretion of the trial judge. Appellate courts should not overturn a trial court's decision merely because reasonable minds could reach a different conclusion.
>
> On appeal, we review a trial court's decision regarding parenting schedules for an abuse of discretion . . . . An abuse of discretion occurs when the trial court applies an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. Appellate courts should reverse custody decisions only when the trial court's ruling falls outside the spectrum of

3

rulings that might reasonably result from an application of the correct legal standards to the evidence.

*C.W.H.*, 538 S.W.3d at 495 (emphasis in original; internal citations, quotation marks, brackets and ellipses omitted; quoting *Armbrister v. Armbrister*, 414 S.W.3d 685 (Tenn. 2013)).

## IV. ANALYSIS

The governing statute, Tenn. Code Ann. § 36-6-108, was amended effective July 1, 2018. Prior to this date, the relocation statute often required courts to conduct an analysis of whether the parents were spending "substantially equal intervals of time" with the child and whether the parent seeking relocation demonstrated a "reasonable purpose" for the proposed move. With the amended statute, the General Assembly has removed these concepts from the analysis.[1]

The current version of the statute requires a parent desiring to relocate outside the state or more than fifty miles from the other parent to notify the other parent not later than sixty days before the move. Tenn. Code Ann. § 36-6-108(a). After notice to the non-relocating parent is given,

> Absent agreement by the parents on a new visitation schedule within thirty (30) days of the notice or upon a timely objection in response to the notice, the relocating parent shall file a petition seeking approval of the relocation. The non-relocating parent has thirty (30) days to file a response in opposition to the petition. In the event no response in opposition is filed within thirty (30) days, the parent proposing to relocate with the child shall be permitted to do so.

*Id.* § 36-6-108(b). "If a petition in opposition to relocation is filed, the court shall determine whether relocation is in the best interest of the minor child." *Id.* § 36-6-108(c)(1). In determining whether relocation is in the child's best interest, the trial court is required to consider the following eight enumerated factors:

---

[1] In 2017, the Supreme Court interpreted and described the former version of the relocation statute as having "a mandatory structure that drastically limits the trial court's discretion" and "includ[ing] a presumption in favor of permitting relocation." *Aragon v. Aragon*, 513 S.W.3d 447, 460 (Tenn. 2017). The current, amended version of the statute appears to restore a significant amount of discretion to trial courts and does not contain a presumption either for or against relocation.

4

(A) The nature, quality, extent of involvement, and duration of the child's relationship with the parent proposing to relocate and with the non-relocating parent, siblings, and other significant persons in the child's life;

(B) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child;

(C) The feasibility of preserving the relationship between the non-relocating parent and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties;

(D) The child's preference, if the child is twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preference of older children should normally be given greater weight than those of younger children;

(E) Whether there is an established pattern of conduct of the relocating parent, either to promote or thwart the relationship of the child and the non-relocating parent;

(F) Whether the relocation of the child will enhance the general quality of life for both the relocating parent and the child, including, but not limited to, financial or emotional benefit or educational opportunity;

(G) The reasons of each parent for seeking or opposing the relocation; and

(H) Any other factor affecting the best interest of the child, including those enumerated in § 36-6-106(a).

Tenn. Code Ann. § 36-6-108(c)(2). As did the trial court, we will address the statutory factors serially.

*(A) The nature, quality, extent of involvement, and duration of the child's relationship with the parent proposing to relocate and with the non-relocating parent, siblings, and other significant persons in the child's life*. Tenn. Code Ann. § 36-6-106(c)(2)(A).

The trial court found that

[t]he [C]hild has significant family relationships in St. Louis, Missouri where the Father is now residing. The [C]hild also has an adult biological sister

5

[*sic*: Half-Sister] in Germany. There are more people in St. Louis, Missouri than Germany who have or have had some interaction and involvement in the minor [C]hild's life over the past few years. The Court is comfortable that if the [C]hild were to move to Germany, he would also have similar people and interactions with other people and family over time. There are more people involved with the child residing in St. Louis, Missouri.

(Numbering in original omitted).

Each parent testified that the other was generally a good and caring parent who had fostered a healthy parent-child relationship. While she was living in Clarksville with Child, Mother was the primary caregiver. The parties agreed that Child was doing well educationally and that he was a good student who made mostly As and some Bs. Father testified that he exercised his visitation regularly and faithfully for two years, driving from Missouri to Clarksville and taking Child for weekend visits at his home in the St. Louis area. Father testified that he has a "multitude" of family members in Missouri, including his mother, sisters, brother-in-law, his sisters' children, his fiancée, and her two children, all of whom "live in close proximity." Many of Father's relatives were at the hearing to support Father and Child. They did not testify, but the parties agreed to the following stipulation:

> And we stipulated, Judge, that if they [Father's family members] were individually called to testify, that they would each comment on what a superior father Mr. Dungey is, how he spends, you know, lots of quality time with his son. They're always outdoors doing activities. That they -- the family's very close. They all get to enjoy time with each other when [Child] is up there; that they greatly enjoy [Child], and he's a super kid.

Father's fiancée, Ms. Antenor, testified that Child's relationship with her two children was good, and Child agreed in his testimony. Both her parents also live nearby to her. Ms. Antenor, who has a Ph.D. in neuroscience, testified that her job requires a lot of travel and that Father takes care of her children while she is traveling. Father testified that Child was "like brothers" with Ms. Antenor's then eight-year-old son.

Mother testified that she had a good family support system in Germany, stating:

Q. When you go back to Germany, who's going to be living near you?

A. My daughter, Aline, and my mom and my cousins, the children of my cousins at [Child's] age around, my uncles and aunts. Everybody of my family, and, of course, friends and their children.

6

Q. When you arrive in Germany, are you going to be staying with your mom? Are you going to have your own place? What's going to happen?

A. Well, my mom give me -- gives me the right to stay with her as with [Child] and -- me and [Child] as long as we need or want to stay. I don't want to stay with my mom, like, to be -- because Aline has, like, a separate area there. So we have also other family property where we -- I plan to move in, and it depends just if it's me or my son and I.

*　　*　　*

Q. Okay. How often would your family be able to see [Child] there?

A. My family in Germany?

Q. Uh-huh.

A. On a daily bas[is], if they want or [Child] wants.

Mother testified that Child "never had the opportunity to see living in Germany. He visited there." Half-Sister, when asked what kind of social support system Child would have in Germany, stated:

Well, he has his family, first and foremost, I guess. So as everyone knows, my mother moved here a couple -- a month ago. We also have his grandmother here and other family members who have already seen him and are missing him already. So then there's also me, which, I guess, I would classify myself as, you know, his one and only sister, and not just for the time being. So, yes -- and like I said, he would also have a huge community that is willing to take him up immediately that all think his English skills are very cool and, you know, that he can join the community very quickly.

The evidence regarding the extent and nature of the family relationships with Child's relatives in Germany was fairly limited. It is clear from Child's testimony that he has had the opportunity to develop close relationships with his family in Missouri. Child testified that he visited his grandmother, aunts, uncles and cousins often, and that he enjoyed it. He also said that he likes Ms. Antenor and her children. Conversely, Child testified that "I don't really know anybody in Germany."

7

***(B) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child.*** Tenn. Code Ann. § 36-6-108(c)(2)(B).

Regarding this factor, the trial court held:

the [C]hild is 13 years old at the present time. The [C]hild does have ADHD and some minor special needs, but this does not supersede the [C]hild's desires. The Court finds that both parties can meet the physical and emotional needs of the [C]hild, but the [C]hild expressed in his testimony that he was concerned about how he would do "socially" in Germany. This factor favors the Father.

(Underlining in original omitted). Mother testified that she arranged for Child to attend a school in Germany that is taught in English only. Mother and Half-Sister testified that Child has fairly good German language skills. Father testified that Child was "not fluent" in German. Child testified as follows:

A. I've always really wanted to live with my dad. It's always been what I wanted, and I don't think I would do good in German school at all.

Q. Tell me why.

A. I can't speak it well. Things that are different -- I don't do good socially here right now, and I don't think I'd do any better there, so...

\*      \*      \*

Q. Okay. When you say you don't think you'd do well in school, the school that I think your mom is looking at for you is an international school that would probably have lots of kids, you know, maybe American kids and other kids. Do you know that to be the case? Or what do you know about that school?

A. I was told that has changed by my mom in Germany.

Q. What's changed?

A. It's just a regular old public school.

\*      \*      \*

8

Q. Okay. I mean, is there, like -- I guess I'm talking about -- could you do --
if you applied yourself, could you be a good kid in Germany and excel in the
German school system?

A. Possibly, yes, but it would take time.

We find no abuse of discretion in the trial court's decision that the evidence pertinent to
this factor favors not allowing Mother to relocate Child to Germany.

*(C) The feasibility of preserving the relationship between the non-relocating parent and
the child through suitable visitation arrangements, considering the logistics and
financial circumstances of the parties*.  Tenn. Code Ann. § 36-6-108(c)(2)(C).

Regarding this factor, the trial court stated simply, "this factor favors the parties
equally."   The logistical and financial challenge in maintaining visitation for the non-
custodial parent when the parents live on two different continents is substantial.  Obviously,
these travel challenges are magnified by the current COVID-19 pandemic.  The parties
testified generally that they would work together to foster as much visitation as feasible,
and the trial court ordered that Mother receive "as close to 100 days per year as the parties
can get."  The trial court also ruled that "Father shall pay 60% of all transportation costs
for the minor child to enjoy visitation with the Mother in Germany."  We find no abuse of
discretion in the trial court's application of this factor.

*(D) The child's preference, if the child is twelve (12) years of age or older*.  Tenn. Code
Ann § 36-6-108(c)(2)(D).

The trial court found as follows in its order:

the [C]hild testified that he wants to stay with his Father. The [C]hild testified
that the Father "gets him" as it relates to the [C]hild's needs.  As such, this
factor favors the Father.

\*      \*      \*

In consideration of other factors that may be relevant, the Court finds that the
Mother acknowledges that the [C]hild does not want to go to Germany and
feels he may be missing out on an opportunity to live abroad.  The Court
must consider that while the Mother may be right, the [C]hild is at an age
where he can say what he wants and why he wants it and the [C]hild has
made it clear that he does not want to leave his Father.  The Court finds that

9

the [C]hild would create an impossible situation and make it difficult for the Mother to be successful in parenting him. This factor favors the Father.

(Emphasis in original omitted). Child testified that his preference was "to live with my dad here in America and in an American school." He said he would prefer to live in St. Louis "with all my family there."

Mother argues that the trial court placed too much emphasis on and "gave too much deference to" the Child's preference as a factor in determining his best interest. This Court has stated the following applicable principles guiding the weight to be afforded to a child's preference in determining his or her best interest:

> Mother argues that the trial court erred by allowing Son's preference to control the outcome of the best interests determination. The preference of a child older than twelve is one of many factors to be given consideration in determining his best interests. *See* Tenn. Code Ann. § 36-6-106(a)(13); Tenn. Code Ann. § 36-6-404(b)(14) (2013). This preference is not controlling on the trial court, and it is error for a trial court to base its decision solely on a child's preference. *Harris v. Harris*, 832 S.W.2d 352, 354 (Tenn. Ct. App. 1992). There is good reason for this rule. While a child's expressed preference may reflect legitimate and wise reasons, it may just as easily reflect manipulation by a parent or a successful campaign by one parent to alienate the child from the other parent. *Krupp v. Cunningham–Grogan*, No. M2005-01098-COA-R3-CV, 2006 WL 2505037, at *9 (Tenn. Ct. App. Aug. 29, 2006). However, when a trial court is reasonably satisfied that a child has not been manipulated and the child's reasons for his preference are not frivolous, "it is permissible, indeed important, to give significant weight to the child's testimony on the parent with whom he wants to live." *Maxwell v. Woodard*, No. M2011-02482-COA-R3-CV, 2013 WL 2420500, at *19 (Tenn. Ct. App. May 31, 2013). Finally, it is not error for a trial court to state that a child's preference was a "deciding factor" in its decision as long as it clearly weighed other factors and circumstances in reaching its decision. *See In re NRG*, No. E2006-01732-COA-R3-CV, 2007 WL 1159475, at *3 (Tenn. Ct. App. Apr. 19, 2007).

*Robinson v. Robinson*, No. M2014-00431-COA-R3-CV, 2015 WL 1259265, at *5 (Tenn. Ct. App. Mar. 16, 2015). In the present case, the trial court did not state that Child's preference was a "deciding factor," and it analyzed and discussed numerous other statutory factors in making its decision. The trial court, having seen and heard the witnesses live, was in a much better position than this Court to discern whether Child was subject to any manipulation and to evaluate the reasons Child gave for his preference. We find no

indication in the record that the trial court placed undue emphasis or weight upon this factor.

Mother also argues that the trial court erred in finding that the Child would "create an impossible situation" for Mother if allowed to relocate to Germany, and that the evidence in the record preponderates against this finding. We agree that the trial court's use of the adjective "impossible" is quite likely a significant overstatement. But the trial court's choice of a single descriptor certainly does not amount to an abuse of discretion warranting reversal of the trial court's decision, considering the totality of the record and the circumstances.

***(E) Whether there is an established pattern of conduct of the relocating parent, either to promote or thwart the relationship of the child and the non-relocating parent***. Tenn. Code Ann. § 36-6-108(c)(2)(E).

The trial court found this factor inapplicable. Neither party takes issue on appeal with this finding.

***(F) Whether the relocation of the child will enhance the general quality of life for both the relocating parent and the child, including, but not limited to, financial or emotional benefit or educational opportunity***. Tenn. Code Ann. § 36-6-108(c)(2)(F).

Regarding this factor, the trial court stated,

> the Court finds that while the [C]hild may have better learning opportunities living abroad, having lived in the United States his entire life, it would most definitely enhance the Mother's quality [of] life as she is a German citizen, but for the [C]hild, said relocation will not enhance the quality of the [C]hild's life, particularly educationally and emotionally because he does not want to go and has worries about the same. This factor favors the Father.

(Underlining in original omitted). Our review of the record does not indicate any abuse of discretion in the trial court's analysis and application of this statutory factor.

***(G) The reasons of each parent for seeking or opposing the relocation***. Tenn. Code Ann. § 36-6-108(c)(2)(G).

The trial court found:

> In consideration of the Mother's reasons for the relocation, the Court finds that it is rational for the Mother to want to return to Germany, but equally

rational for the Father to oppose the same as it relates to the child. When looking at this balance, the court has to consider the best interest of the child as it is determined in Tennessee Code Annotated § 36-6-106. This brings this issue closer to equal because the Mother has clearly been the primary caregiver of the child but with relation to the change in the parenting time, the Father's time would change by 48 days if the child were permitted to relocate to Germany. This factor favors the Mother.

(Underlining in original omitted). Mother gave compelling reasons for her desire to move back to her home country, including a lack of social and familial support in Clarksville; better financial and vocational opportunities and state-provided benefits in Germany; and family and social support in Germany. Her decision to relocate is understandable and rational. The trial court's findings on this factor indicate that it gave proper consideration to the fact that Mother had served well as Child's primary caregiver prior to her decision to move. We find no abuse of discretion regarding this factor.

***(H) Any other factor affecting the best interest of the child, including those enumerated in § 36-6-106(a)***. Tenn. Code Ann. § 36-6-108(c)(2)(H).

Mother argues on appeal that the trial court erred by not placing greater weight on Father's failure to financially support her as required by the divorce decree. Mother asserts that "just before he filed his petition, Father owed over $1,763.53 in child support, $21,570.88 in alimony, and $10,092.87 in retirement pay to Mother." It appears that just before filing his petition, Father paid a lump sum to Mother to clear up his arrearages. Mother does not raise any issue of Father owing her money on appeal. The trial court did consider Father's failure to timely support Mother financially, stating:

In consideration of the disposition of the parties, the support, ability to provide for the needs of the [C]hild; the Court finds that the Father has not done what he was court ordered to do and did not pay child support, retirement or alimony at all or in a timely fashion. This failure on behalf of the Father put the Mother in a financial bind. This factor favors the Mother.

(Underlining in original omitted). We agree with Mother and the trial court that this factor does not place Father in a positive light. We do not agree, however, that Father's shortcomings in this regard should override the trial court's analysis of the other pertinent factors in finding that a move to Germany is not in Child's best interest.

Mother discusses at length and relies heavily upon *Schaeffer v. Patterson*, No. W2018-02097-COA-R3-JV, 2019 WL 6824903 (Tenn. Ct. App. Dec. 13, 2019), with good reason; it appears to be the first and, at this point, only opinion of this Court applying the

newly-amended version of the relocation statute. Mother argues that *Schaeffer* is analogous to this case and supports reversal of the trial court. We disagree. In *Schaeffer*, this Court affirmed the trial court's decision to allow the mother to move with the child to Blytheville, Arkansas, a distance of 94 miles away from the father's home. *Id.* at *2. The trial court in *Schaeffer* "found that all of the factors favored relocation in this case," *id.* at *12, a situation obviously different from the trial court's findings in this case. The *Schaeffer* Court applied the well-established standards reflecting that "trial courts are vested with wide discretion in matters of child custody" and "appellate courts are reluctant to second-guess a trial court's decisions" in custody determinations. *Id.* at *4. Finally, in *Schaeffer* this Court noted that the mother's proposed move was relatively short and did not impose an undue burden on the father's visitation, stating:

> the evidence shows that despite Mother's move to Blytheville during the pendency of this action, Father was not required to make a single accommodation to maintain his parenting time. Mother continued to meet Father at the designated place and never prevented him from exercising his parenting time. Although the trial court's parenting plan allowing Mother to relocate does require Father to travel farther for the exchange of the child, the distance Father must travel is not even outside the county where he lives. This is not a significant burden on Father.
>
> *        *        *
>
> Here, the child is young and her stability will not be greatly impacted by a short move to a neighboring state.

*Id.* at *12. In stark contrast, in the present case Mother is proposing to move Child to a different continent. We have no disagreement with the *Schaeffer* decision, but it is distinguishable from the case presented here.

The relocation statute anticipates the need for a trial court to modify a permanent parenting plan in the event the court refuses to allow relocation of a child and the relocating parent decides to move nonetheless, providing that:

> If the court finds that relocation is not in the best interest of the minor child, the court shall deny the petition for approval and, utilizing the factors provided in § 36-6-106(a), enter a modified permanent parenting plan that shall become effective only if the parent proposing to relocate elects to do so despite the court's decision denying the parent's petition for approval.

13

Tenn. Code Ann. § 36-6-108(c)(4). Because the trial court did not abuse its discretion by finding a move not to be in Child's best interest, we also affirm its decision to modify the parenting plan to designate Father as primary residential parent and adjust the residential parenting schedule accordingly.

Both parties ask for an award of their attorney's fees on appeal. Tenn. Code Ann. § 36-6-108(f) allows that "[e]ither parent in a parental relocation matter may recover reasonable attorney fees and other litigation expenses from the other parent in the discretion of the court." Exercising our discretion, we hold that each party should be responsible for his or her own attorney's fees on appeal under the circumstances of this case.

## V. CONCLUSION

The judgment of the trial court is affirmed. Costs of this appeal are assessed to the Appellant, Doris Anne Baumgaertner, for which execution may issue if necessary.

_____
KRISTI M. DAVIS, JUDGE